IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JESSE B.,[1] | Case No. 1:24-cv-01298-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Jesse B. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's

("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C.

§ 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28

U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

///

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in December 1966, making him fifty-two years old on November 28, 2019, his alleged disability onset date.[2] (Tr. 23, 119.) In his application, Plaintiff alleges disability due to an unknown digestive system disorder, an unknown musculoskeletal disorder of the feet and hands, lower back problems, chronic obstructive pulmonary disease, and chronic bronchitis. (*Id.* at 119.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on April 10, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 122, 128, 144.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on October 23, 2023. (*Id.* at 98-117.) On February 16, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 12-27.) On June 21, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2022 (Tr. 18) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before September 30, 2022, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 12-27.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 28, 2019, through his date

last insured of September 30, 2022. (*Id.* at 18.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: asthma and trigger finger/mild left hand osteoarthritis. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 18-19.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff can lift/carry fifty pounds occasionally and twenty-five pounds frequently, (2) Plaintiff can push/pull as much as he can lift/carry, (3) Plaintiff can sit for six hours, and can stand or walk in combination for no more than six hours in an eight-hour workday, and (4) Plaintiff can tolerate no exposure to dust, odors, fumes and pulmonary irritants, and can have no exposure to extreme cold or heat. (*Id.* at 19.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a painter. (*Id.* at 21.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, such as floor waxer and bagger. (*Id.* at 23.)

## DISCUSSION

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to incorporate any manipulative limitations caused by his left thumb trigger finger and mild osteoarthritis, which the ALJ found to be severe impairments. (Pl.'s Opening Br. ("Pl.'s Br.") at 5-11, ECF No. 11.) As explained below, the Court finds that the ALJ did not commit any harmful legal error and that the ALJ's opinion is supported by substantial evidence.

Plaintiff's primary argument is that the ALJ was required to include limitations in the RFC resulting from Plaintiff's left thumb trigger finger and mild osteoarthritis because the ALJ found that those were severe impairments at step two of the sequential evaluation process. (Pl.'s

Br. at 5-11.) However, the Ninth Circuit has rejected the argument that "the ALJ's finding of a
severe impairment at step two of the disability determination process necessarily requires
inclusion of that impairment in the hypothetical question posed to the VE at step five" because
"[a] step-two determination is not dispositive at step five." *Lara v. Astrue*, 305 F. App'x 324,
326 (9th Cir. 2008) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)); *see also*
*Jefferey M. v. Comm'r, Soc. Sec. Admin.*, No. 3:24-cv-00564-AN, 2025 WL 1836488, at *3 (D.
Or. July 2, 2025) ("Plaintiff assumes, incorrectly, that an ALJ's findings at step two determines
the ALJ's RFC formulation at step five." (first citing *Hoopai*, 499 F.3d at 1075-76; and then
citing *Lara*, 305 F. App'x at 326)); *Beno H. v. Comm'r Soc. Sec. Admin.*, No. 3:23-cv-01375-SB,
2024 WL 4818435, at *4 (D. Or. Nov. 18, 2024) ("Plaintiff emphasizes that the ALJ determined
that Plaintiff's migraines constitute a 'severe impairment' at step two and argues that the RFC
should have therefore included the entirety of work limitations caused by migraines. Plaintiff's
argument conflates the ALJ's analysis at steps two and three with the ALJ's RFC assessment at
steps four and five, which are separate and distinct. Plaintiff's argument assumes, incorrectly,
that an ALJ's findings at step two determine the ALJ's RFC formulation at step five. The ALJ
committed no error by finding Plaintiff's migraines a 'severe impairment' at step two and
formulating an RFC that did not include restrictions that address the full range of Plaintiff's
alleged migraine symptoms." (first citing *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-
01539-MA, 2016 WL 4445467, at *3 (D. Or. Aug. 22, 2016); then citing *Hoopai*, 499 F.3d at
1075-76; and then citing *Lara*, 305 F. App'x at 326)) (simplified); *Delia P. v. Saul*, No. 5:19-
00246 ADS, 2020 WL 5750426, at *5 (C.D. Cal. Sept. 25, 2020) ("Plaintiff seems to argue that
her severe impairment of carpal tunnel syndrome alone should require the ALJ to have included
manipulative limitations in her RFC. The diagnosis of a condition alone, however, does not

establish disability." (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990))); *Boyd v.*

*Astrue*, No. C10-5756-MJP-BAT, 2011 WL 5515517, at *5 (W.D. Wash. May 23, 2011)

("Contrary to [the claimant]'s contention, the ALJ's step two finding does not necessarily mean

she had a significant limitation at any subsequent step." (citing *Hoopai*, 499 F.3d at 1076)),

*report and recommendation adopted*, 2011 WL 5515249 (W.D. Wash. Nov. 9, 2011), *aff'd sub*

*nom. Boyd v. Colvin*, 524 F. App'x 334 (9th Cir. 2013).

        In any event, the ALJ did incorporate limitations in Plaintiff's RFC resulting from his left

thumb trigger finger and mild osteoarthritis impairments by limiting him to medium exertional

work.[3] (*See* Tr. 20, "The claimant's hand impairment supports limiting him to medium exertional

work."; *see also* Pl.'s Reply at 2, ECF No. 14, acknowledging that "the ALJ did limit Plaintiff to

medium exertion[.]") Plaintiff argues that the ALJ should have also incorporated manipulative

limitations in the RFC resulting from his left thumb trigger finger, but Plaintiff points to no

medical opinion evidence in the record identifying any manipulative limitations.[4] Importantly,

---

        [3] The relevant regulations define "medium work" as "involv[ing] lifting no more than
[fifty] pounds at a time with frequent lifting or carrying of objects weighing up to [twenty-five]
pounds." 20 C.F.R. § 404.1567(c); *see also* SSR 83-10, 1983 WL 31251, at *6 (explaining that
for "medium work," "[u]se of the arms and hands is necessary to grasp, hold, and turn objects, as
opposed to the finer activities in much sedentary work, which require precision use of the fingers
as well as use of the hands and arms.").

        [4] The state agency medical consultants found that Plaintiff did not have a severe
impairment and did not recommend any manipulative limitations. (Tr. 121, "There was an
injection for [left] trigger thumb 6/11/2020. There was an X-ray of the [left] hand showing
10/10/2019 & 2/20/2020 showing Mild DJD of [left] [first] [carpometacarpal "CMC"] joint,
otherwise unremarkable. There have been no surgeries, ED visits, or hospitalizations for hand
pain. The claimant got at least temporary relief with the injection for triggering. Mild
osteoarthritis of the [first] CMC of the [left] hand is not severely limiting."; *id.* at 126,
"Cl[aimant] has normal function of bilat[eral] hands in spite of trigger finger/thumbs[.]
Cl[aimant] does not have any severe functional limitations.") The ALJ found those opinions
"somewhat persuasive" because they were consistent with Plaintiff's treatment records showing
only mild osteoarthritis in the left hand, but the ALJ nevertheless found Plaintiff's left thumb
trigger finger and mild osteoarthritis to be severe impairments based on Plaintiff's hearing
testimony, and therefore limited Plaintiff to medium work. (*Id.* at 21.)

the medical opinion of Victoria Vandyke, APRN-NP ("NP Vandyke"), on which Plaintiff relies, "fail[ed] to provide a functional analysis." (Tr. 21, finding NP Vandyke's opinion "not persuasive" because it "fails to provide a functional analysis" and noting that NP Vandyke's observation that Plaintiff's "thumbs are immobile and unable to lay flat" are not "functional limitation[s]"; *id.* at 20, concluding that "the medical evidence of record prior to the date last insured fails to establish functional limitations consistent with disability.") In the absence of any medical opinion evidence recommending manipulative limitations, the ALJ did not err by failing to incorporate manipulative limitations in Plaintiff's RFC. *See, e.g.*, *Conn v. Colvin*, No. 3:14-cv-05698-KLS, 2015 WL 2089368, at *3 (W.D. Wash. May 5, 2015) ("Plaintiff argues that the ALJ erred in failing to account for manipulative limitations in the RFC assessment, despite evidence of his hand and arm neuropathy, cervical disc herniation and degenerative disease. Plaintiff points to no medical opinion evidence establishing that he has any such manipulative limitations, however[.]") (simplified); *Delia P.*, 2020 WL 5750426, at *5 ("With regard to her impairment of carpal tunnel syndrome, which the ALJ found to be severe, Plaintiff argues the ALJ committed reversible error in failing to impose any manipulative limitations in her RFC. As noted above, there is no medical opinion[] of record recommending such limitations for carpal tunnel restrictions and Plaintiff here cites to no such opinions or points to no medical records with this recommendation. Plaintiff merely points to the medical records where she was diagnosed with carpal tunnel syndrome.") (simplified).[5]

---

[5] In the absence of any medical opinion evidence of manipulative limitations, the Court disagrees that there was inconsistent evidence that the ALJ was required to reconcile, as Plaintiff suggests. (Pl.'s Br. at 10); *see also* 20 C.F.R. § 404.1520b(b) ("In some situations, we may not be able to make our determination or decision because the evidence in your case record is insufficient or inconsistent. We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision. We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or

Thus, Plaintiff is left with the argument that the ALJ should have incorporated manipulative limitations in the RFC based on his symptom testimony. (Pl.'s Br. at 6-9; Pl.'s Reply at 2.) The ALJ addressed Plaintiff's symptom testimony, noting that Plaintiff complained of pain in his hands, an inability to hold objects or write, an inability to lift and carry more than five pounds, and a lack of fine motor skills. (Tr. 20.) The ALJ discounted the severity of Plaintiff's symptoms, in part because Plaintiff's medical records reflected that he obtained relief for his left hand symptoms with steroid injections but he chose not to "pursue further injections." (*Id.*)

An ALJ must provide "specific, clear, and convincing reasons" for discounting a claimant's subjective symptom testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). It is well settled that an ALJ may discount a claimant's symptom testimony on the grounds that symptoms improved with treatment or if the claimant failed to follow through with treatment. *See, e.g.*, *Trogdon v. O'Malley*, No. 22-16461, 2024 WL 3949081, at *1 (9th Cir. Aug. 27, 2024) ("The [ALJ] provided clear and convincing reasons supported by substantial evidence for discounting [the claimant]'s testimony regarding the severity of his symptoms, including . . . evidence that his symptoms had improved with treatment.") (citations omitted); *Conant v. Kijakazi*, No. 20-35699, 2021 WL 3422762, at *1 (9th Cir. Aug. 5, 2021) ("The ALJ reasonably relied on the evidence of [the claimant]'s improvement with medication, and her failure to follow her prescribed treatment plan, to find [the claimant]'s symptom allegations not entirely credible. These are specific, clear and convincing reasons to discount her symptom testimony." (first

---

when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques. If the evidence in your case record is insufficient or inconsistent, we may need to take . . . additional actions[.]"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.").

citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); and then citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted); *Tommasetti*, 533 F.3d at 1039-40 (holding that a claimant's unexplained failure to follow through with prescribed treatment was a clear and convincing reason to discount symptom testimony); *see also* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (explaining that the ALJ considers the effectiveness of medication and other treatment in evaluating the reliability of symptom testimony).

Here, substantial evidence in the record supports that steroid injections provided Plaintiff with relief from his left hand symptoms, but that Plaintiff elected not to continue receiving steroid injections. (*See* Tr. 378-81, at an appointment in February 2020, Plaintiff received his first steroid injection and was told to return in six weeks; *id.* at 376, Plaintiff returned four months later in June 2020, reporting that the injection "did work quite effectively" but that his symptoms were starting to return, he received a second injection, and was told to return in six weeks and that it may take several weeks for the injection to reach its full effect; *id.* at 373, Plaintiff returned three months later in September 2020, reporting that the previous injections provided temporary relief, and complaining of increasing pain in his left thumb but no "catching or locking within the thumb;" *id.* at 375, at the September 2020, appointment, the provider discussed conservative management "including the option of a corticosteroid injection" for both Plaintiff's trigger finger and arthritis and informed Plaintiff that "a second injection can be performed which can potentially resolve this problem" but "the patient declines a repeat injection" and "would like to continue with more conservative management for the time being;" *id.*, reflecting that Plaintiff was a "no show" for his October 12, 2020, follow-up appointment.)

PAGE 10 – OPINION AND ORDER

The Court finds that the ALJ did not err by discounting Plaintiff's testimony about the severity of his left hand symptoms on the grounds that treatment provided relief and he opted not to follow through with treatment.[6] *See, e.g.*, *Metzgar v. Comm'r of Soc. Sec. Admin.*, No. CV-24-02410-PHX-KML, 2025 WL 1291462, at *4 (D. Ariz. May 5, 2025) ("[I]t was not error for the ALJ to rely on [the claimant's] symptom improvement from her injections." (citing *Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024))); *Jadelynne L. v. Kijakazi*, No. 1:21-cv-1083-SI, 2022 WL 3347030, at *5 (D. Or. Aug. 11, 2022) (holding that "Plaintiff's improvement with treatment is a clear and convincing reason for discounting Plaintiff's testimony" and that the ALJ's conclusion was supported by evidence of steroid injections providing pain relief) (citations omitted).

For all of these reasons, the Court concludes that the ALJ did not err by failing to include manipulative limitations in Plaintiff's RFC.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 9th day of July, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[6] Plaintiff argues that he "grew tired of returning every few weeks for more injections" (Pl.'s Br. at 8; Pl.'s Reply at 2), but cites no authority supporting that the availability of effective yet inconvenient treatment supports a disability finding. In any event, as summarized above, the record does not reflect that Plaintiff returned "every few weeks" for injections, but rather he was instructed to return every six weeks but waited three or four months before returning for additional injections and then declined any further injections. (Tr. 373-81.)